UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON WAREHOUSE TRADING )
CORP., )
                  Plaintiff, )  C. A. No. 2005-CV-10022-GAO
v. )
)
ALLIANCE SHIPPERS, INC., )
                  Defendant. )

## AMENDED COMPLAINT AND JURY DEMAND

1. This diversity case is brought to recover damages which the plaintiff has suffered as a result of the defendants' breach of its contractual obligations and promises to the plaintiff and as a result of the defendant's tortious, unfair, and deceptive conduct.

### Jurisdiction and Venue

2. This Court has jurisdiction to adjudicate this matter pursuant to 28 U.S.C. §1332(a) because the parties are of diverse citizenship and the value of the matter in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (c) because the defendants are subject to personal jurisdiction in this district.

### The Parties

4. Plaintiff Boston Warehouse Trading Corp. ("Boston Warehouse") is a Massachusetts corporation which has its principal place of business in Norwood, Massachusetts. Boston Warehouse is in the business of importing consumer goods and selling them to retailers.

5. Defendant Alliance Shippers, Inc. ("Alliance") is a New Jersey corporation which has its principal places of business in New Jersey and Illinois. Alliance has a division called Alliance

1

International. Doing business as such and under other names, Alliance has provided its customers, for many years, with shipping, customs clearance, storage, and transportation logistics services, is highly knowledgeable about the commercial shipping industry, and holds itself out to the public and its customers as such. Alliance also holds itself out to the public and its customers as providing "The Perfect Shipment" and represents to them that "The Perfect Shipment is your shipment -- picked up on time, delivered on time, delivered without exception and billed accurately with 100% customer satisfaction."

Factual Allegations

6. In 2004, Boston Warehouse caused certain seasonal, Christmas-oriented goods (the "Goods") to be manufactured in China, with the intention of importing the Goods into the United States and selling them. Boston Warehouse paid $182,126.52 for the Goods.

7. Also in 2004, Boston Warehouse entered into a contract to sell the Goods to Kohl's Department Stores ("Kohl's"), at a price of $413,020.80, and to make the Goods available to be picked up and delivered to Kohl's in time for the 2004 Christmas selling season.

8. Also in 2004, Boston Warehouse and Alliance, acting through Alliance's resident agent in Massachusetts, contractually agreed by means of an offer and acceptance that, in return for consideration to be paid by Boston Warehouse, Alliance would (a) ship the Goods from China to California; (b) provide Boston Warehouse with customs clearance services in connection with the importation of the Goods into the United States; and (c) notify the overland freight carrier for Kohl's (the "Freight Carrier") of the location and availability of the Goods when they were ready to be picked up and delivered to Kohl's.

9. Boston Warehouse provided to Alliance, in a timely fashion, all of the information that

Alliance required in order to perform its obligations to Boston Warehouse and repeatedly made clear to Alliance the importance of the prompt transportation of the Goods.

10. On or about November 30 or December 1, 2004, after the Goods arrived in California, Alliance informed Boston Warehouse that they had cleared customs and represented to Boston Warehouse that Alliance was then in the process of notifying the Freight Carrier of the location of the Goods and their availability to be picked up and delivered to Kohl's. When it made that representation, it intended to induce Boston Warehouse to rely upon it.

11. At that time, Alliance knew that Boston Warehouse had an agreement to sell the Goods to Kohl's, Alliance was on notice that they were Christmas-oriented Goods, and Alliance knew or should have known that its failure to notify the Freight Carrier as it said it was doing would cause Boston Warehouse to suffer damages of the nature described below.

12. At the time Alliance represented to Boston Warehouse that it was in the process of notifying the Freight Carrier of the location of the Goods and their availability to be picked up and delivered to Kohl's, Boston Warehouse believed that representation to be true, reasonably relied upon it, and reasonably understood that Alliance was notifying the Freight Carrier at that time, all as Alliance knew or should have known Boston Warehouse would do.

13. In fact, however, Alliance's representation that it was in the process of notifying the Freight Carrier was false. Alliance did not notify the Freight Carrier and did not inform Boston Warehouse of its failure to do so. If Alliance had notified the Freight Carrier at the time it falsely represented to Boston Warehouse that it was doing so, Boston Warehouse's transaction with Kohls' would have been consummated and Boston Warehouse would not have suffered the damages described below.

14. About one week later, on or about December 7, 2004, a Boston Warehouse employee learned from an agent of Kohl's that the Goods had not been picked up and delivered to Kohl's. The Boston Warehouse employee then phoned the Alliance employee who was responsible for the matter. The Alliance employee then admitted that she had not sent the Delivery Order to the Freight Carrier. The Boston Warehouse employee then told the Alliance employee to do whatever had to be done to get the Goods picked up immediately, and she assured him that she would do so immediately.

15. Alliance then failed once again to notify the Freight Carrier that the Goods were ready to be picked up and again did not inform Boston Warehouse that it had failed to do so.

16. On December 9, 2004, the agent for Kohl's informed Boston Warehouse that the Goods had not been picked up and delivered and that Kohl's had canceled the transaction as a result.

17. On December 10, 2004, the Alliance employee who was responsible for the matter admitted to Boston Warehouse that she had again failed to notify the Freight Carrier that the Goods were ready to be picked up and delivered.

18. Upon information and belief, Boston Warehouse's reputation with Kohl's has been damaged as a result of this incident and Boston Warehouse may lose future business opportunities as a result of it.

19. Alliance's failure to notify the Freight Carrier of the location and availability of the Goods was grossly negligent.

20. As a direct result of Kohl's having canceled its purchase of the Goods due to Alliance's failure to notify the Freight Carrier, the value of the Goods was reduced to a steeply

discounted, liquidation value amounting to much less than the price Boston Warehouse had paid for the Goods. In addition to the cost of the Goods, less their liquidation value, Boston Warehouse has incurred shipping container use charges, storage costs and charges, and other costs and expenses as a result of Alliance's failure to notify the Freight Carrier in a timely fashion of the location and availability of the Goods.

21. Boston Warehouse has also suffered lost profits of over $230,000, to date, as a direct and proximate result of Alliance's failure to satisfy its obligations to Boston Warehouse as described above.

22. All of Boston Warehouse's damages were reasonably foreseeable by Alliance.

## COUNT I
### (Breach of Contract)

23. Boston Warehouse restates the allegations contained in the foregoing paragraphs and incorporates them herein by reference.

24. As described above, Boston Warehouse and Alliance had a contract for which Boston Warehouse gave adequate consideration.

25. As described above, Alliance materially breached that contract by failing, with gross negligence, to notify the Freight Carrier that the Goods were available to be picked up.

26. Boston Warehouse has suffered and will suffer the damages described above as a direct and proximate result of Alliance's breach.

27. At the time of Alliance's breach, Boston Warehouse had complied with all of its contractual obligations to Alliance.

28. Boston Warehouse has demanded that Alliance take responsibility for its breach and

Alliance has declined to do so.

COUNT II<br>(<u>Estoppel</u>)

29. Boston Warehouse restates the allegations contained in the foregoing paragraphs and incorporates them herein.

30. As Alliance knew or should have known, Boston Warehouse reasonably relied, to its detriment, on Alliance's promises and representations as described above and has been damaged by Alliance's failure to honor those promises and representations.

31. Injustice can be avoided only by holding Alliance responsible for the detrimental consequences that Boston Warehouse has suffered.

32. In the alternative to Count I, if there was no contract between Boston Warehouse and Alliance pursuant to which Alliance was responsible for notifying the Freight Carrier that the Goods were ready to be picked up (which Boston Warehouse denies), Alliance is liable for Boston Warehouse's damages by reason of an estoppel.

COUNT III<br>(Fraud/Deceit/Misrepresentation)

33. Boston Warehouse restates the allegations contained in the foregoing paragraphs and incorporates them herein by reference.

34. As described above, on or about November 30 or December 1, Alliance knowingly made a false representation of fact to Boston Warehouse that it was then in the process of notifying the Freight Carrier of the location of the Goods and their availability to be picked up and delivered to Kohl's. Alliance intended to induce Boston Warehouse to rely on that representation and made the representation for that purpose.

35. Boston Warehouse reasonably and justifiably believed that representation to be true and reasonably and justifiably relied upon it, as Alliance knew or should have known it would.

36. Boston Warehouse has incurred the damages described above as a proximate result of its reasonable and justifiable reliance on Alliance's false representation.

COUNT IV
(Violation of M.G.L. c. 93A, § 11)

37. Boston Warehouse restates the allegations contained in the foregoing paragraphs and incorporates them herein by reference.

38. At all material times, Boston Warehouse and Alliance were engaged in trade or commerce within the meaning of Mass. Gen. Laws c. 93A.

39. Alliance's conduct, as described above, constitutes unfair and deceptive acts and practices, in violation of Mass. Gen. Laws c. 93A, § 11.

40. Within the meaning of ch. 93A, § 11, the unfair and deceptive acts and practices at issue occurred primarily and substantially in Massachusetts.

41. Alliance's unfair and deceptive acts and practices were knowing and willful.

42. As a proximate consequence, Boston Warehouse has suffered the damages described above.

COUNT V
(Negligent Misrepresentation)

43. Boston Warehouse restates the allegations contained in the foregoing paragraphs and incorporates them herein by reference.

44. In the course of its business, Alliance supplied false information to Boston Warehouse for its guidance in the business transaction described above, intending Boston

Warehouse to rely upon it, which Boston Warehouse reasonably and justifiably did.

45. In the alternative to Counts III and IV, if Alliance did not know that it was making a false representation to Boston Warehouse (which Boston Warehouse denies), Alliance failed to exercise reasonable care or competence in obtaining and communicating that false information to Boston Warehouse and was grossly negligent in doing so.

46. As described above, Alliance breached a duty of care to Boston Warehouse, as a direct and reasonably foreseeable result of which Boston Warehouse has suffered and will suffer the pecuniary losses described above.

## COUNT VI
### (Negligent Interference with Contract)

47. Boston Warehouse restates the allegations contained in the foregoing paragraphs and incorporates them herein by reference.

48. As a proximate result of Alliance's grossly negligent failure to send the Delivery Order to the Freight Carrier, Boston Warehouse has lost the order from Kohl's described above, of which Alliance was aware, and Boston Warehouse has suffered pecuniary losses, costs, and lost profits.

49. Those damages were not part of Boston Warehouse's ordinary business risks.

50. Boston Warehouse's damages were reasonably foreseeable by Alliance, and Alliance is liable to Boston Warehouse for them.

WHEREFORE, under all Counts of its Amended Complaint, Boston Warehouse demands judgment against Alliance for the full amount of all of its existing and future damages resulting

from the foregoing events, including (a) the cost of the Goods, less the price that Boston Warehouse may be paid for them in mitigation of its damages; (b) Boston Warehouse's lost profits; (c) the storage and container use charges and other costs and expenses that Boston Warehouse has incurred and will incur as a result of the foregoing events; (d) any loss of business reputation and future business resulting from Alliance's conduct as described above; and (e) indemnification and defense of Boston Warehouse against any claims that Kohl's may assert against it in connection with the foregoing events. With respect to Count IV, Boston Warehouse also demands treble damages and attorneys fees. Boston Warehouse also demands punitive damages on all counts for which the law may provide such damages. Boston Warehouse also demands interest, costs, and such further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS

BOSTON WAREHOUSE TRADING CORP.,
By its attorneys,

_____
Donnelly, Conroy & Gelhaar, LLP
James B. Conroy (BBO No. 96315)
Karen A. Pickett (BBO No. 633801)
One Beacon Street
Boston, MA 02108
(617) 720-2880

Dated: February 1, 2005